**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
No. 5:25-cv-00370-D-RN

| | | |
|---|---|---|
| RODNEY LITTLE and DEBORAH LITTLE,<br><br>Plaintiffs,<br><br>*v.*<br><br>CROSSCOUNTRY MORTGAGE, LLC, RALEIGH REALTY INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **DEFENDANT RALEIGH REALTY INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br>Fed. R. Civ. P. 12(b)(1) and 12(b)(6) |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT........................................................................7

ARGUMENT..................................................................................................8

I. PLAINTIFFS ARE NOT EXEMPT FROM INJURY-IN-FACT REQUIREMENTS.......................................................................8

II. PLAINTIFFS' UNTIMELY RESPA CLAIM CANNOT BE TOLLED................12

III. PLAINTIFFS ALLEGE NO COMARKETING PAYMENTS OUTSIDE OF RESPA'S CARVEOUT.................................................................15

IV. PLAINTIFFS' UDTPA CLAIM DOES NOT APPLY TO THE PERVASIVELY-REGULATED CONDUCT AT ISSUE.............................................17

V. PLAINTIFFS ALLEGE NO OTHER UNFAIR OR DECEPTIVE CONDUCT...19

VI. PLAINTIFFS' CAUSE OF ACTION FOR "CIVIL CONSPIRACY" FAILS ALONGSIDE THE CLAIMS ON WHICH IT DEPENDS..............................20

CONCLUSION...............................................................................20

## TABLE OF AUTHORITIES


*Arthur v. Ticor Title Ins. Co. of Fla.*,
569 F.3d 154 (4th Cir. 2009) ........................................ 11

*Baehr v. Creig Northrop Team, P.C.*,
953 F.3d 244 (4th Cir. 2020)........................................ 8, 9, 12

*Bausch v. Philatelic Leasing, Ltd.*,
34 F.3d 1066, 1994 U.S. App. LEXIS 22289, at *20 (4th Cir. 1994)............ 13

*Bloss v. Gov't Emps. Ins. Co.*,
No. 1:24CV536, 2025 LX 148380 (M.D.N.C. Apr. 9, 2025)........................ 20

*Brasko v. Howard Bank*,
2022 U.S. Dist. LEXIS 57627 (D. Md. Mar. 29, 2022)........................ 9

*Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*,
845 F.3d 104 (4th Cir. 2016)........................................ 17

*Chao v. Virginia Dep't of Transp.*,
291 F.3d 276, 283 (4th Cir. 2002)........................................ 12, 13

*Collins v. First Fin. Servs., Inc.*,
2016 U.S. Dist. LEXIS 16322 (E.D.N.C. Feb. 10, 2016) ........................ 15

*Cross v. Ciox Health, LLC*,
438 F. Supp. 3d 572 (E.D.N.C. 2020)........................................ 20

*Dalton v. Camp*,
353 N.C. 647, 548 S.E.2d 704 (2001) ........................................ 19

*Dan King Plumbing Heating & Air Conditioning, LLC v. Harrison*,
2022-NCCOA-27, 281 N.C. App. 312, 869 S.E.2d 34 (2022)........................ 20

*Davis v. Beazer Homes, U.S.A. Inc.*,
No. 1:08 CV 247, 2009 U.S. Dist. LEXIS 107253, at *13-14
(M.D.N.C. Nov. 17, 2009)........................................ 13

*DC Custom Freight, LLC v. Tammy A. Ross & Assocs., Inc.*,
273 N.C. App. 220, 848 S.E.2d 552 (2020) ........................................ 20

*Edmonson v. Eagle Nat'l Bank*,
922 F.3d 535, 553 (4th Cir. 2019)........................................ 14

*Eichholz v. Wells Fargo Bank, NA*,

No. 10-CV-13622, 2011 U.S. Dist. LEXIS 128455 (E.D. Mich. Nov. 7, 2011)..10

*Ekstrom v. Cong. Bank*,
No. CV ELH-20-1501, 2020 U.S. Dist. LEXIS 208719, at *7
(D. Md. Nov. 9, 2020)....14

*Elliott v. Am. States Ins. Co.*,
883 F.3d 384 (4th Cir. 2018)....20

*Exclaim Mktg., LLC v. DirecTV, LLC*,
134 F. Supp. 3d 1011 (E.D.N.C. 2015)....19

*In re Fifth Third Bank, Nat. Ass'n-Vill. of Penland Litig.*,
217 N.C. App. 199, 719 S.E.2d 171 (2011)....20

*Gilbane Bldg. Co. v. Fed. Rsrv. Bank of Richmond, Charlotte Branch*,
80 F.3d 895 (4th Cir. 1996)....20

*Harrington Mfg. Co. v. Powell Mfg. Co.*,
38 N.C. App. 393, 248 S.E.2d 739 (1978)....20

*Hughes on behalf of Hughes v. Bank of Am. Nat'l Ass'n*,
697 F. App'x 191, 192-93 (4th Cir. 2017)....13

*Johnson v. Phoenix Mut. Life Ins. Co.*,
300 N.C. 247, 266 S.E.2d 610 (1980)....20

*Kettle v. Leonard*,
No. 7:11-CV-189-BR, 2012 U.S. Dist. LEXIS 132205 (E.D.N.C. Sept. 17, 2012)....12

*Mbongo v. Specialized Loan Servicing, LLC*,
No. CV PJM 15-2941, 2016 U.S. Dist. LEXIS 82832, at *10
(D. Md. June 24, 2016)....14

*Morris v. CrossCountry Mortg., LLC*,
No. 5:22-CV-336-BO-BM, 2023 U.S. Dist. LEXIS 69431 (E.D.N.C. Apr. 20, 2023)....10

*Morris v. CrossCountry Mortg., LLC*,
No. 5:22-CV-336-BO-BM, 2023 U.S. Dist. LEXIS 190304 (E.D.N.C. Oct. 24, 2023)....10

*Mullinax v. Radian Guar. Inc.*,
199 F. Supp. 2d 311, 329 (M.D.N.C. 2002)....14

*Murphy v. Capella Educ. Co.*,

589 F. App’x 646, 652 (4th Cir. 2014)....13

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009)....11, 16

*Register v. N. Sun Hous. & Dev., Inc.*,
No. 7:04-CV-68-FL, 2005 U.S. Dist. LEXIS 43759 (E.D.N.C. Sept. 2, 2005)..18

*Rel. Ins., Inc. v. Pilot Risk Mgmt. Consulting, LLC*,
2024 NCBC LEXIS 99....20

*Renois v. WVMF Funding, LLC*,
No. 20-CV-9281-LTS, 2024 U.S. Dist. LEXIS 56891 (S.D.N.Y. Mar. 27, 2024)....18

*Robertson v. Sea Pines Real Est. Companies, Inc.*,
679 F.3d 278, 291 n.2 (4th Cir. 2012)....13

*Shiflett v. Lakeview Loan Servicing, LLC*,
No. 2:23-CV-00397-DJC-EFB, 2025 LX 105252 (E.D. Cal. Feb. 25, 2025).....18

*Sparks v. Oxy-Health, LLC*,
134 F. Supp. 3d 961 (E.D.N.C. 2015)....20

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....9

*Walker v. Fleetwood Homes of N. Carolina, Inc.*,
362 N.C. 63, 653 S.E.2d 393 (2007)....20

*Willis v. Bank of Am. Corp.*,
No. CIV.A. ELH-13-02615, 2014 U.S. Dist. LEXIS 105339 (D. Md. Aug. 1, 2014)....16

*Wilson v. Eagle Nat’l Bank*,
No. 8:20-CV-01344-JRR, 2023 U.S. Dist. LEXIS 42588 (D. Md. Mar. 13, 2023)....9

*Zahran v. Bank of Am., N.A.*,
No. 3:20-CV-427-MOC-DSC, 2021 U.S. Dist. LEXIS 103087 (W.D.N.C. June 2, 2021)....18

Statutes

15 U.S.C. § 1610(a)(1)....18

12 U.S.C. § 2605 .......... 18

12 U.S.C. § 2607 .......... 6, 15

12 U.S.C. § 2616 .......... 17

North Carolina Unfair and Deceptive Trade Practices Act
N.C. Gen. Stat. § 75-1.1, *et seq.* (“UDTPA”) .......... *passim*

Real Estate Settlement Procedures Act
12 U.S.C. § 2607, *et seq.* (“RESPA”) .......... *passim*

## PRELIMINARY STATEMENT

Plaintiffs filed their Amended Complaint in response to numerous pleading deficiencies identified by Defendant CrossCountry Mortgage, LLC ("CrossCountry) in its original Motion to Dismiss. (ECF Nos. 17-18). Plaintiffs' brief in opposition to Defendants' motions to dismiss their Amended Complaint (ECF No. 25) makes clear that, despite availing themselves of the opportunity to replead, Plaintiffs have not and cannot cure these deficiencies.

With respect to Plaintiffs' RESPA claim, Plaintiffs still fail to allege any concrete injury connected to the Raleigh Realty and CrossCountry's Comarketing Agreement. Even if Plaintiffs had alleged a concrete injury, their claim is time-barred, and would still fall within RESPA's statutory carve-out for services actually performed. With respect to Plaintiffs' UDTPA claim covering the same allegations, the conduct in question is already governed by a pervasive regulatory regime (RESPA), and otherwise fails to meet the stringent pleading standards for unfair and deceptive conduct. Finally, Plaintiffs' free-standing claim for "civil conspiracy," really a theory of liability, adds nothing, and is wholly dependent on Plaintiffs' fatally-defective RESPA and UDTPA claims.

Instead of meaningfully engaging with Defendants' arguments in their response brief, Plaintiffs seeks to subvert well-established law: According to Plaintiffs, it does not matter whether they suffered a concrete injury—all that matters is an alleged statutory violation with a "tendency" to injure. Nor does it matter that Plaintiff failed to bring a timely RESPA claim—the Court should allow

it to proceed on a fraudulent concealment theory without any supporting allegations. Nor does it matter that state law precludes UDTPA claims for conduct covered by RESPA—RESPA's preemption provision somehow enlarges state law beyond what state law itself authorizes.

As further discussed below, none of these novel arguments has merit, and Plaintiffs' Amended Complaint should be dismissed with prejudice.[1]

## ARGUMENT

### I. PLAINTIFFS ARE NOT EXEMPT FROM INJURY-IN-FACT REQUIREMENTS.

Plaintiffs' brief does not meaningfully address the fact that the Amended Complaint fails to allege any overcharge, and wholly ignores several of Defendants' arguments. Instead, Plaintiffs claim that they are exempt from pleading a concrete injury because, according to them, "the standard for injury under *Baehr* is not actual overpayment by a plaintiff; it is a violation with even a *tendency* to increase the cost of settlement services." (Pls.' Br. in Opp. at 10) (emphasis in original).

Plaintiffs' theory that standing can be conferred simply by pleading a statutory violation that has a "tendency" to cause an injury is exactly the type of pleading rejected by the Court in *Baehr*. The *Baehr* plaintiffs lacked standing because their claims of a kickback scheme were "untethered from any evidence that [the kickback scheme] ***increased settlement costs***[.]" *Baehr v. Creig*

[1] All capitalized terms used but not defined herein shall have the definitions ascribed to them in Raleigh Realty's memorandum in support of its motion to dismiss. (ECF No. 25).

*Northrop Team, P.C.*, 953 F.3d 244, 250, 254 (4th Cir. 2020) (emphasis added). Although the *Baehr* plaintiffs—like Plaintiffs here—alleged that defendant settlement service providers had an exclusive, kickback-funded referral arrangement, the absence of any resulting overcharge meant their claim was only a "statutory violation divorced from any real world effect," insufficient to confer standing. *Id.*; *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-340 (2016) (injury must be "concrete," "particularized," and must "actually exist"). Plaintiffs' contention that the mere allegation of a kickback scheme is sufficient to plead concrete injury is simply wrong, and also wholly unsupported by the other authorities Plaintiffs cite. *See Brasko v. Howard Bank*, No. 1:20-CV-3489-SAG, 2022 U.S. Dist. LEXIS 57627, at *7 (D. Md. Mar. 30, 2022) (stating only that a plaintiff need not show a "*particular* 'overcharge' for a *particular* settlement service") (emphasis added); *see also Wilson v. Eagle Nat'l Bank*, No. 8:20-CV-01344-JRR, 2023 U.S. Dist. LEXIS 42588, at *21,*18 (D. Md. Mar. 13, 2023) (finding that plaintiffs "presented corroborating evidence of overcharges" and stating, "importantly, in *Baehr*, the plaintiffs did not argue they were harmed by a settlement service overcharge").

Without the law on their side, Plaintiffs hedge, claiming in their opposition brief that their overcharge allegations are based on an "investigation by Plaintiffs' counsel" that, to some extent and by some method, incorporated the mortgage amount and the loan-to-value ratio of Plaintiffs' loan. (Pls.'s Br. in Opp. at 11-12, 13 n.4). Instead of providing any specific factual allegations, as they must, Plaintiffs simply claim they would have received lower charges and ask the Court

to take their word for it with respect to a claimed "investigation" mentioned nowhere in the Amended Complaint. This is insufficient to plausibly allege injury. *See Eichholz v. Wells Fargo Bank, NA*, No. 10-CV-13622, 2011 U.S. Dist. LEXIS 128455, at *7-8 (E.D. Mich. Nov. 7, 2011) (RESPA claim dismissed where plaintiff "made an allegation without any specificity or factual support").

Plaintiffs' reliance on the *Morris* decisions is also misplaced. Plaintiffs concede that there are "differences between the particular facts establishing harm to the *Morris* plaintiffs and those establishing their own harm," but they understate the significance of those differences. (Pls.' Br. in Opp. at 12). Even in *Morris I*, the *Morris* plaintiffs alleged, for example, that they had *actually* prequalified with another mortgage lender at a lower interest rate. *See Morris v. CrossCountry Mortg., LLC*, No. 5:22-CV-336-BO-BM, 2023 U.S. Dist. LEXIS 69431, at * 2 (E.D.N.C. Apr. 19, 2023). That prior prequalification was insufficient to plausibly allege an overcharge or injury, resulting in dismissal. *Id.* at *9. To survive dismissal in *Morris II*, the plaintiffs made specific allegations showing that their prequalification rate could have translated into an *actual* interest rate. *Morris v. CrossCountry Mortg., LLC*, No. 5:22-CV-336-BO-BM, 2023 U.S. Dist. LEXIS 190304, at *7-8 (E.D.N.C. Oct. 23, 2023). That required allegations identifying (1) the market fluctuations in mortgage interest rates during their search for a loan and (2) any changes to their financial status. *Id.*

Here, Plaintiffs merely speculate that they "would have been able to" obtain lower charges without identifying a prior prequalification or any other facts that

could substantiate that claim. This falls well short of even the deficient allegations in *Morris I*. Plaintiffs' "would have been able to"—even taken as true—cannot confer standing.

First, there cannot be an injury from the mere allegation that a mortgage lender does not charge the lowest rates of all its competitors. (Def.'s Br. in Supp. at 10-11); *Arthur v. Ticor Title Ins. Co. of Fla.*, 569 F.3d 154, 156 (4th Cir. 2009) ("RESPA is not a price-control statute"). Plaintiffs not only fail to directly address this argument, but concede in their opposition brief that the .49% lower interest rate they allegedly "would have been able to receive" is ***not*** a market-standard rate. (Pls.' Br. in Opp. at 12). They instead ask the Court to guess, without basis, that the market standard rate is "somewhere" between Plaintiffs' alleged 2.5% alternative interest rate and the 2.99% interest rate Plaintiffs actually received. *Id.* Guesswork, however, cannot save Plaintiffs' RESPA claim from dismissal. *Nemet Chevrolet v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (the Court "need not accept as true unwarranted inferences [or] unreasonable conclusions.").

Second, Plaintiffs have failed to allege that their supposed injury was tied in any way to the Comarketing Agreement that constitutes the alleged kickback scheme. (Def.'s Br. in Supp. at 11-12). Plaintiffs allege only that their Raleigh Realty agent recommended CrossCountry to them. (AC ¶ 69). But Plaintiffs have pled no facts to suggest that they were prevented from researching or using other lenders. At most, these RESPA allegations, taken as true, amount to a "bare procedural

violation, divorced from any concrete harm." *Baehr*, 953 F.3d at 252, 255-56. Plaintiffs fail to address these arguments, and thus concede them. *Kettle v. Leonard*, No. 7:11-CV-189-BR, 2012 U.S. Dist. LEXIS 132205, at *15 (E.D.N.C. Sept. 17, 2012) (quotations and citations omitted) ("When a party does not address arguments raised by a movant, the court may treat those arguments as conceded.").

Accordingly, because Plaintiffs have not pled facts sufficient to show an overcharge, let alone one causally connected to the alleged kickback scheme, Plaintiffs lack standing to pursue any of their RESPA, UDTPA, or "civil conspiracy" claims, warranting dismissal of all under Rule 12(b)(1).

## II. PLAINTIFFS' UNTIMELY RESPA CLAIM CANNOT BE TOLLED.

Plaintiffs assert that their RESPA claim, which expired three over three years, should be tolled on a fraudulent concealment theory raised for the first time in their response brief, the supporting allegations for which are entirely absent from their Amended Complaint. (Pls.' Br. in Opp. at 8-10). Because Plaintiffs have failed to plead any facts supporting a claim for fraudulent concealment—let alone with the particularity required under Rule 9(b)—their untimely RESPA claim should be dismissed.

"Any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent[.]" *Chao v. Virginia Dep't of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002). To allege fraudulent concealment and toll a limitations period, a plaintiff must show (1) that the defendant fraudulently

concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence. *Hughes on behalf of Hughes v. Bank of Am. Nat'l Ass'n*, 697 F. App'x 191, 192-93 (4th Cir. 2017). A plaintiff must plead fraudulent concealment with the level of particularity required by Rule 9(b). *Bausch v. Philatelic Leasing, Ltd.*, No. 93–1685, 34 F.3d 1066, 1994 U.S. App. LEXIS 22289, at *20 (4th Cir. 1994). To satisfy Rule 9 (b), a plaintiff must "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Murphy v. Capella Educ. Co.*, 589 F. App'x 646, 652 (4th Cir. 2014).

Plaintiffs have failed to plead fraudulent concealment because they have failed to plead an "affirmative act of concealment." *Robertson v. Sea Pines Real Est. Companies, Inc.*, 679 F.3d 278, 291 n.2 (4th Cir. 2012). A mere "failure to admit wrongdoing [] does not suffice" to toll a limitations period. *Id.* The Amended Complaint does not allege a single affirmative act of concealment, let alone with particularity.

Nor have Plaintiffs alleged even a single act of diligence that they performed to discover their claims, notwithstanding that they were required to plead specific facts showing that they "ha[ve] done everything [they] can to preserve [their] rights." *Davis v. Beazer Homes, U.S.A. Inc.*, No. 1:08 CV 247, 2009 U.S. Dist. LEXIS 107253, at *13-14 (M.D.N.C. Nov. 17, 2009) (quoting *Chao*, 291 F.3d at 283) (dismissing time-barred RESPA claim for failure to show adequate

diligence).

These pleading failures are fatal to Plaintiffs' new fraudulent concealment argument. The easily distinguishable cases Plaintiffs cite do not help them, involving as they do numerous, particularized allegations as to the elements of fraudulent concealment, a much different situation from Plaintiffs' RESPA claim here.[2]

Plaintiffs' other, scattershot attempts to avoid their pleading burden are similarly unavailing. Plaintiffs vaguely assert that the alleged kickback scheme was "by its nature…secret illegal conduct." (Defs' Br. in Opp. at 9). But "a violation of RESPA alone is not a self-concealing wrong" sufficient to toll a limitations period. *Mullinax v. Radian Guar. Inc.*, 199 F. Supp. 2d 311, 329 (M.D.N.C. 2002). Similarly, it is well settled that the "discovery rule" to which Plaintiffs allude cannot apply to RESPA claims given the plain language of the statute. *Id.* at 324.. Nor have Plaintiffs alleged they undertook any of the due diligence required for invocation of the discovery rule, generally. *Mbongo v. Specialized Loan Servicing, LLC*, No. CV PJM 15-2941, 2016 U.S. Dist. LEXIS 82832, at *10 (D. Md. June 24, 2016).

[2] *See, e.g., Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019) (plaintiffs alleged with particularity multiple affirmative acts of concealment through "sham entities" along with, *inter alia*, the "names of the sham entities [and] the broker or loan officer connected to each sham entity"); *Ekstrom v. Cong. Bank*, No. CV ELH-20-1501, 2020 U.S. Dist. LEXIS 208719, at *7 (D. Md. Nov. 9, 2020) (plaintiffs alleged the use of "sham invoices" and numerous, specifically identified falsified documents used to affirmatively conceal plaintiffs' claims).

## III. PLAINTIFFS ALLEGE NO COMARKETING PAYMENTS OUTSIDE OF RESPA'S CARVE-OUT.

RESPA § 2607 provides that "[n]othing in this section shall be construed as prohibiting [. . .] payment for goods or facilities actually furnished or for services actually performed." 12 U.S.C. § 2607(c)(2).

Nowhere in Plaintiffs' Amended Complaint or opposition brief do Plaintiffs claim that Raleigh Realty failed to receive the services that it paid for under the Comarketing Agreement, which are clearly laid out in Exhibit 1 to the Amended Complaint. (AC Ex. 1 at 16). Instead, Plaintiffs go to great lengths to avoid the inconvenient fact that Raleigh Realty and CrossCountry, the parties to the Comarketing Agreement, actually obtained services under the Comarketing Agreement. So far from even *attempting* to meet their own pleading burden, *see Collins v. First Fin. Servs., Inc.*, No. 7:14-CV-288-FL, 2016 U.S. Dist. LEXIS 16322, at *22 (E.D.N.C. Feb. 10, 2016) (dismissing RESPA claim because plaintiff "has not alleged any kickbacks [] between [codefendants] that were other than 'for services actually performed'"), Plaintiffs try to flip the pleading burden on its head, arguing that "Defendants offer no evidence of services "actually performed[.]'" (Pls.' Br. in Opp. at 14). Plaintiffs' RESPA claim should fail for this reason alone.

Recycling allegations from the Amended Complaint, Plaintiffs argue that services provided under the Comarketing Agreement had "no value[.]" (*Id.*). As Defendants have argued, however, the ultimate value of the marketing services provided under the Comarketing Agreement is immaterial to RESPA's carve-out analysis. (Def.'s Br. in Supp. at 21-22). Rather, the applicable analysis is whether

payments made under the Comarketing Agreement reasonably reflect the *market value* of the services received. *Willis v. Bank of Am. Corp.*, No. CIV.A. ELH-13-02615, 2014 U.S. Dist. LEXIS 105339, at *44-45 (D. Md. Aug. 1, 2014) (dismissing RESPA claim where plaintiff failed to "offer[] case-specific allegations as to whether the compensation for those services was reasonable or unreasonable"). Plaintiffs' Amended Complaint offers no case-specific allegations as to whether the compensation for services under the Comarketing Agreement was reasonable or unreasonable, and fails for this reason, too.

Finally, Plaintiffs request that, to the extent their allegations regarding the Comarketing Agreement remain insufficient to avoid RESPA's carve-out, the Court allow them to further amend their Amended Complaint so they can allege that the reasonable market value of the services received under the Comarketing Agreement "was zero." (Pls.' Br. in Opp. at 15 n.6). That amendment, however, would be futile: Plaintiffs have attached proof to the Amended Complaint of the several services rendered under the Comarketing Agreement. (AC Ex. 1 at 16). Plaintiffs thus cannot credibly claim that these services had a market value of "zero." Such further amendment, belied entirely by Plaintiffs' other allegations and Exhibit 1 to their Amended Complaint, need not and should not be taken as true.[3] *Nemet Chevrolet, Ltd.*, 591 F.3d at 253.

[3] Beyond the futility of this amendment, as explained in Defendants' opening briefs, the Court should dismiss all of Plaintiffs' claims with prejudice because the Amended Complaint fails to remedy any of the defects identified in the original motion to dismiss Plaintiffs' original Complaint.

## IV. PLAINTIFFS' UDPTA CLAIM DOES NOT APPLY TO THE PERVASIVELY-REGULATED CONDUCT AT ISSUE.

Plaintiffs do not contest the abundance of Fourth Circuit and North Carolina case law holding that the UDTPA does not apply to matters subject to pervasive and intricate regulation by other statutory schemes. (*See* Def.'s Br. in Supp. at 23-26). Nor do they contest that the mortgage lending industry is subject to such pervasive and intricate regulation. (*See id.*). Instead, Plaintiffs claim that RESPA's preemption provision, 12 U.S.C. § 2616, which provides that RESPA does not exempt compliance with state law in certain circumstances, should result in the UDTPA being expanded to apply to conduct already under extensive regulation. (Pls.' Br. in Opp. at 17).

In doing so, Plaintiffs ask the Court to interpret 12 U.S.C. § 2616 to effectively create state law where there is none, a power neither Congress nor federal courts possess. While 12 U.S.C. § 2616 generally does not exempt Defendants' compliance with existing state law, the state law at issue (the UDTPA) *itself does not apply* to the conduct Plaintiffs allege. As the Fourth Circuit has recognized, "North Carolina courts have ***refused to apply*** the UDTPA to matters already under pervasive and intricate regulation." *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 845 F.3d 104, 110 (4th Cir. 2016) (emphasis added) (quoting *Skinner v. E.F. Hutton & Co.*, 314 N.C. 267, 274, 333 S.E.2d 236, 241 (1985)). In other words, this is *not* a matter of federal preemption, but of proper application of North Carolina law.

RESPA's preemption provision is thus immaterial. This Court has already

prohibited a UDTPA a claim against a mortgage lender that mirrored a Truth in Lending Act ("TILA") violation—a federal statute containing a preemption provision nearly identical to RESPA's. *See Register v. N. Sun Hous. & Dev., Inc.*, No. 7:04-CV-68-FL, 2005 U.S. Dist. LEXIS 43759, at *31-33 (E.D.N.C. Sept. 2, 2005); *see also* 15 U.S.C. § 1610(a)(1) (TILA does not "annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions[.]").

Plaintiffs' examples of "concurrent" RESPA and UDTPA claims do not help them. In *Zahran*, the plaintiff's RESPA claim was limited to the defendant's failure to respond to a Qualified Written Request under RESPA § 2605, while the plaintiff separately asserted that defendant charged her false fees. *See Zahran v. Bank of Am., N.A.*, No. 3:20-CV-427-MOC-DSC, 2021 U.S. Dist. LEXIS 103087, at *1 (W.D.N.C. June 2, 2021). As Plaintiffs correctly acknowledge, the issue of whether the conduct alleged by the *Morris* plaintiffs was subject to pervasive and intricate regulation was never before the Court.[4] (Pls.' Br. in Opp. at 17). Nor do Plaintiffs' other cases, which do not even involve the UDTPA, aid their argument. *See Shiflett v. Lakeview Loan Servicing, LLC*, No. 2:23-CV-00397-DJC-EFB, 2025 LX 105252 (E.D. Cal. Feb. 25, 2025); *Renois v. WVMF Funding, LLC*, No. 20-CV-9281-LTS, 2024 U.S. Dist. LEXIS 56891 (S.D.N.Y. Mar. 27, 2024).

Finally, Plaintiffs' argument that their UDTPA claim is "not based solely on RESPA violations" in that Plaintiffs allege that their Raleigh Realty agent told

[4] Nor, for that matter, is there any indication that this issue was raised in *Zahran*.

them that CrossCountry was the "best option" for their mortgage misses the mark. (Pls.' Br. in Opp. at 17). Referrals by settlement service providers are clearly subject to pervasive and intricate regulation, including by RESPA, and this allegation is central to Plaintiffs' RESPA claim. (Def.'s Br. in Supp. at 23-26.

## V. PLAINTIFFS ALLEGE NO OTHER UNFAIR OR DECEPTIVE CONDUCT.

Nor, as Defendants have explained in detail and as confirmed in Plaintiffs' brief in opposition, have Plaintiffs alleged other conduct that is unfair or deceptive within the meaning of the UDTPA.[5] (Def.'s Br. in Supp. at 26-29). Plaintiffs repeatedly imply that a violation of RESPA or other statutes "may" be a *per se* violation of the UDTPA and that, even if it is not, such an alleged violation could "potentially" be relevant to a UDTPA claim. (Pls.' Br. in Opp. at 21). Plaintiffs' qualifying language is telling: They have not and cannot cite any authority to suggest that an alleged violation of RESPA—or the other statutes and regulations they claim Defendants violated—can constitute a *per se* violation of the UDTPA.

To the contrary, "a violation of a statute or regulation does not constitute a *per se* UDTPA violation unless the statute or regulation 'specifically designates that a violation of the statute or regulation is also a violation of the UDTPA or

---

[5] Plaintiffs claim that, because they do not allege a breach of contract, they need not plead "egregious or aggravating circumstances" to state a UDTPA claim. (Pls.' Br. in Opp. at 22-23). Plaintiffs are wrong; courts routinely apply the "egregious or aggravating" requirement to UDTPA claims involving no breach of contract allegations. *Exclaim Mktg., LLC v. DirecTV, LLC*, 134 F. Supp. 3d 1011, 1022 (E.D.N.C. 2015), *aff'd,* 674 F. App'x 250 (4th Cir. 2016) ("In all cases, the [UDTPA] only applies where egregious or aggravating circumstances are proved"); *Dalton v. Camp*, 353 N.C. 647, 658, 548 S.E.2d 704, 711 (2001).

'specifically defines and proscribes conduct which is unfair or deceptive within the meaning of the UDTPA.'" *Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 586 (E.D.N.C. 2020) (violation of statute was not *per se* violation of UDTPA because "[i]t does not specifically define and proscribe 'unfair or deceptive acts or practices in or affecting commerce') (emphasis in original). Neither RESPA nor the other statutes and regulations cited by Plaintiffs meet this standard, nor do Plaintiffs argue otherwise.

Beyond Plaintiffs equivocal (and erroneous) '*per se* violation' argument, Plaintiffs do nothing to demonstrate how the Amended Complaint's allegations satisfy Plaintiffs' stringent burden of alleging "unfair or deceptive conduct" within the meaning of the UDTPA. Indeed, Plaintiffs' own authorities demonstrate Plaintiffs' failure to meet their stringent burden: the vast majority of the UDTPA cases Plaintiffs cite resulted in a finding ***in favor of the UDTPA defendant***.[6] Plaintiffs' UDTPA claim should thus be dismissed.

## VI. PLAINTIFFS' CAUSE OF ACTION FOR "CIVIL CONSPIRACY" FAILS ALONGSIDE THE CLAIMS ON WHICH IT DEPENDS.

Plaintiffs' freestanding cause of action for "civil conspiracy" should be

---

[6] *See See Elliott v. Am. States Ins. Co*., 883 F.3d 384, 399 (4th Cir. 2018); *Bloss v. Gov't Emps. Ins. Co*., No. 1:24CV536, 2025 LX 148380, at *23-26 (M.D.N.C. Apr. 9, 2025); *Harrington Mfg. Co. v. Powell Mfg. Co*., 38 N.C. App. 393, 396, 403, 248 S.E.2d 739, 742, 745 (1978); *Sparks v. Oxy-Health, LLC*, 134 F. Supp. 3d 961, 999 (E.D.N.C. 2015); *DC Custom Freight, LLC v. Tammy A. Ross & Assocs., Inc.*, 273 N.C. App. 220, 235, 848 S.E.2d 552, 563 (2020); *Gilbane Bldg. Co. v. Fed. Rsrv. Bank of Richmond, Charlotte Branch*, 80 F.3d 895, 898 (4th Cir. 1996); *Johnson v. Phoenix Mut. Life Ins. Co*., 300 N.C. 247, 266, 266 S.E.2d 610, 623 (1980); *Walker v. Fleetwood Homes of N. Carolina, Inc.,* 362 N.C. 63, 70, 653 S.E.2d 393, 398 (2007); *In re Fifth Third Bank, Nat. Ass'n-Vill. of Penland Litig*., 217 N.C. App. 199, 210, 719 S.E.2d 171, 178 (2011); *Rel. Ins., Inc. v. Pilot Risk Mgmt. Consulting*, LLC, 2024 NCBC 46, 2024 NCBC LEXIS 99 ¶ 403; *Dan King Plumbing Heating & Air Conditioning, LLC v. Harrison*, 2022-NCCOA-27, 281 N.C. App. 312, 321, 869 S.E.2d 34, 43 (2022).

dismissed as a theory liability entirely dependent on Plaintiffs' fatally defective RESPA and UDTPA claims. (*See* Def.'s Br. in Supp. at 29-30). Plaintiffs do not argue otherwise.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed with prejudice.

This the 11th day of December, 2025.

PARRY LAW, PLLC

/s/ Jonah A. Garson

K. Alan Parry
N.C. State Bar No. 31343
Jonah A. Garson
N.C. State Bar No. 55547
100 Europa Drive, Ste 351
Chapel Hill, NC 27517
(919) 913-3320
kap@parryfirm.com
jag@parryfirm.com

*Counsel for Defendant Raleigh Realty Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document is filed with the Court's CM/ECF filing system which effectuates service upon all parties having appeared in this matter.

This the 11th day of December, 2025.

/s/ Jonah A. Garson